UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-181-GWU

RICHARD A. WEBB, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

08-181 Richard A. Webb

    4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

08-181 Richard A. Webb

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

08-181 Richard A. Webb

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

08-181 Richard A. Webb

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

08-181 Richard A. Webb

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Richard A. Webb, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar spine and depression. (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Webb retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 19-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 41, high school education, and work experience as a shaft mechanic and roof bolter could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional limitations. (Tr. 363). He: (1) could occasionally bend, stoop, and crawl; (2) could not push or pull more than 30 pounds; (3) was limited to simple tasks performed in object-focused settings; and

7

(4) had a moderately limited ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, complete a normal work day or work week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number or length of rest periods, interact appropriately with the general public and respond appropriately to changes in the work setting. (Tr. 363-4). The VE responded that there were jobs that such a person could perform, and proceeded to give the number of jobs in which they existed in the state and national economies. (Tr. 364).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Webb alleged disability due to continuous back pain which he related to a mining injury in which he received an electrical shock, causing him to fall (Tr. 86, 360), as well as nervousness and depression. The plaintiff does not challenge the ALJ's choice of physical restrictions, which were consistent with the opinion of Dr. William Lester, a treating source. (Tr. 259-64, 311).

The plaintiff does challenge the ALJ's choice of mental restrictions.

Mr. Webb testified to feeling nervous and shaky since his accident, and feeling nervous about going anywhere by himself. (Tr. 352). He was seeing a

08-181 Richard A. Webb

psychiatrist, Dr. Robert Gentry, and receiving medication, which he felt was helpful. (Tr. 353). He was able to take care of his personal needs and performed a few activities such as going to church, taking care of his lawn and occasional shopping. (Tr. 355-8).

Medical records in the transcript show that the plaintiff complained of nervousness to an orthopedic examiner, Dr. Ronald Dubin, who referred him to Dr. Gentry in January, 2005. (Tr. 221). Dr. Gentry began treating Mr. Webb in February, 2005, at which time he described trembling and nervousness, poor sleep, nightmares, and poor concentration. (Tr. 281). His wife stated that he was irritable. (Id.). Dr. Gentry diagnosed major depression with post-traumatic stress disorder (PTSD) from injury and shock. (Id.). He prescribed medications, which were changed several times over the next few months, with the plaintiff generally reporting he was feeling improved. (Tr. 272-80). For instance, on September 22, 2005, Dr. Gentry noted that he "seems better." (Tr. 272). The notes are not very detailed, and even the plaintiff's subjective symptoms seem oriented to physical problems. Dr. Gentry completed a medical report on July 7, 2005, stating under the heading "Restrictions" that he was "free to do as much as he can" from a psychiatric standpoint. (Tr. 285). Subsequently, on a November 21, 2005 report, Dr. Gentry opined that Mr. Webb would have moderate limitations in his ability to maintain

08-181 Richard A. Webb

concentration and attention to tasks and a "moderate to marked" limitation in his ability to adapt to stressful situations. (Tr. 268).

Two other sources conducted one-time examinations.

Psychologist Jeanne M. Bennett examined Mr. Webb on September 10, 2005. (Tr. 230). His main complaint was of back pain, but he also reported seeing Dr. Gentry for psychiatric treatment. (Tr. 232). He described nightmares, panic attacks, and poor sleep. (Id.). He claimed to engage in few activities, and denied doing yard work. (Id.). Dr. Bennett noted a tense and constricted facial expression and a restricted affect, but Mr. Webb's attention, concentration, and memory were intact. (Tr. 233). He had good eye contact, fluent speech, organized thought, adequate judgment, and appeared to be capable of making decisions for himself independently. (Tr. 233-4). Dr. Bennett's diagnostic impression was of a chronic pain disorder and PTSD, with a current Global Assessment of Functioning (GAF) score of 45. (Tr. 234-5). A GAF score between 41 and 50 represents serious symptoms or any serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. In terms of functional limitations, Dr. Bennett opined that Mr. Webb would have a "moderate to marked" limitation in his capacity to adequately interact with supervisors, fellow workers, and work pressures and a "marked to severe" limitation in his ability to tolerate the stress and pressure of day-to-day employment. (Tr.

235).  She inconsistently indicated that the plaintiff's ability to understand and remember simple, repetitive tasks had not been affected, but then said it was moderately affected.  (Id.).[1]

Dr. Robert Granacher, a psychiatrist, examined the plaintiff on May 4, 2005 for Worker's Compensation purposes, and reviewed a number of records, including, apparently, some from Dr. Gentry.  (Tr. 227).[2]  Mr. Webb denied that the electrical shock had affected his mind, that he thought about the shock very little, had no flashbacks, and, while he had nightmares, they had nothing to do with the accident itself.  (Tr. 316).  He was not working due to his back.  (Id.).  He described activities including driving a vehicle, attending church weekly, mowing his yard with a riding mower, planting a small garden with his children, attending two or three sporting events per year and fishing two or three times a year, and eating outside of his home three to four times a month.  (Id.).  He continued to describe nervousness "at times," poor sleep, and weight gain, but he also appeared pleasant, cooperative, forthright, and oriented to the examiner, with no evidence of undue anxiety or

---

[1] Edward Stodola, a non-examining state agency psychologist, opined that Dr. Bennett's restrictions were not supported by objective findings, and assessed restrictions consistent with the hypothetical question, pp. 7-8, supra. (Tr. 253-5).  Dr. Jay Athy affirmed this opinion without additional comment.  (Tr. 304-5).

[2] Since some of Dr. Gentry's examinations took place after the date of Dr. Granacher's report, he could not have seen all of the notes of Dr. Gentry which were considered by the ALJ.

depression.  (Tr. 318).  He voiced mild to moderate somatic concerns.  (Tr. 319).  Psychologists in Dr. Granacher's employ administered a number of objective tests, which did not suggest that Mr. Webb was exaggerating his condition, although the MMTI-2 was interpreted as "questionably valid . . . characterized by a highly virtuous self-presentation," making it likely that it was an underestimate of his current psychological problems.  (Tr. 322-3).  The profile was said to be consistent with a pain disorder and associated mood symptoms.  (Tr. 327).  On a test known as the Battery for Health Improvement-2, his depression scale was not elevated, and the scores were consistent with a pain disorder and functional complaint. (Id.).  Achievement testing showed a high school equivalent reading score and the Kaufmann Brief Intelligence Test-2 produced a composite IQ score of 84.  (Tr. 324).  Dr. Granacher concluded that Mr. Webb had no evidence of a psychiatric condition as a result of his electrical shock.  (Tr. 327).  He added that if the plaintiff had some form of depression prior to his examination, it was entirely in remission and not detectible on face-to-face examination.  Dr. Granacher asserted that Mr. Webb "denies any psychiatric symptoms currently."  (Id.).  He opined that he did not require any psychiatric restrictions on his job performance, and had the mental capacity to engage in any work he was trained, educated, or experienced to perform.  (Id.).

Asked to comment on Dr. Granacher's report, Dr. Gentry stated that he disagreed with several items (Tr. 270), and stated that "I do feel there has been improvement in Mr. Webb in the seven months I have seen him, and I agree that he no longer shows any signs of PTSD, but he does show signs of major depression . . . . Mr. Webb is better as stated, and if his current medications are curing him he will have to be on them eight months to one year." (Tr. 271).

The ALJ declined to accept Dr. Gentry's opinion that the plaintiff was moderately to markedly limited in his ability to tolerate stress, the only area in which the treating source's opinion was at variance with the hypothetical question. He cited several grounds for this opinion. He felt that Dr. Gentry's treatment notes contradicted the limitations because, within two months of treatment, Mr. Webb was reporting better sleep, was able to drive to Knoxville, Tennessee from Pineville, Kentucky to keep his appointments with Dr. Gentry, a majority of his complaints were related more to interference from back pain rather than depressive symptoms, and he was able to interact well with family and community members and perform daily activities such as shopping. (Tr. 20). He also stated that Dr. Gentry's notes consisted chiefly of Mr. Webb's subjective presentation "whereas Dr. Granacher conducted some clinical and objective examinations and . . . some forensic distortion analysis." (Tr. 21). The ALJ stated that he would give the plaintiff the benefit of the doubt in adopting the findings and limitations assessed by the state

08-181 Richard A. Webb

agency reviewing psychologists, because they were the most consistent with the evidence as a whole. (Id.). Therefore, the court cannot agree with the plaintiff's argument that the ALJ failed to provide a reasonable articulation of his grounds for disagreeing with the treating physician's opinion, as required by Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004).

The plaintiff asserts that, beyond the Wilson issue, the ALJ was incorrect in stating that Dr. Gentry's notes contradicted his conclusions, in that such factors as poor sleep and anxiety attacks were also described. In general, while the office notes do reflect complaints of sleep trouble, they consist primarily of the plaintiff's generally non-specific subjective statements without any indication from the psychiatrist that he observed the plaintiff to be nervous or depressed or that his activities were being constricted by these factors. The most recent note indicates that a new medication was helping Mr. Webb sleep; otherwise, it consists only of a description of complaints of physical problems. (Tr. 269). The court recognizes that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation," see Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (citations omitted); however, the striking thing about Dr. Gentry's notes is that most of his observations were either innocuous or, as the ALJ noted, concerned with physical problems. Moreover, it appears from Dr. Granacher's' report that when

08-181  Richard A. Webb

objective testing was administered it did not produce any very remarkable findings consistent with the degree of mental limitation alleged by the plaintiff.  Therefore, the court concludes that the ALJ had adequate grounds for discounting the treating physician's opinion under the facts of the current case.[3]

The decision will be affirmed.

This the 8th day of April, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge

---

[3] Moreover, the ALJ did apply fairly extensive "moderate" restrictions, rather than following Dr. Granacher's assertion that the plaintiff would have no restrictions at all. The only specific restrictions provided by Dr. Gentry were that the plaintiff would have moderate limitations with his concentration and attention, which is consistent with the hypothetical question, and a moderate to marked limitation in his ability to adapt to stressful situations.  (Tr. 268).  Read technically, the ALJ might have reasonably concluded that the plaintiff's ability to adapt to stress was limited to a "moderate," but not a "marked," degree.  Finally, the hypothetical question limited the individual to the performance of simple tasks in an object-focused setting, a consideration which rules out at least some sources of work-related stress.